HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDWARD D. NELSON and ALLISON NELSON, husband and wife,

Plaintiff,

v.

SANDVIK MINING AND CONSTRUCTION, INC. a corporation; FORGE WELKIN, INC., a corporation; DRILTECH, INC, a corporation; and ABC CORPORATION,

Defendant.

CASE NO. 3:10-cv-05778-RBL

ORDER

[DKT. #48]

THIS MATTER is before the Court on Sandvik's Motion for Summary Judgment [Dkt. #48]. Plaintiff Edward Nelson was injured while using a Sandvik Marlin 5 to drill a water well while employed by Arcadia. While Nelson cleared water out of the well, debris created a blockage that caused air pressure to build up in the blewey tube.[1] Nelson attempted to clear the blockage by directing the debris with his hand. When he touched the blewey tube, it disconnected from the Atlas casing hammer used on the drill. Defendant Sandvik manufactured

---

[1] A blewey tube is an optional accessory used with a casing hammer that directs water and soil removed from the ground to a particular location during the drilling operation.

ORDER - 1

1  the Marlin 5 drill and sold it to Arcadia, but it did not manufacture or sell the Atlas casing

2  hammer, and it did not manufacture, sell, or install the blewey tube.

3       Nelson brought a Washington Products Liability Act claim and a negligence claim

4  against Sandvik, arguing that the "drill rig product" was not reasonably safe as designed and

5  lacked adequate warning.  Sandvik moves for summary judgment on both claims arguing that the

6  Washington Products Liability Act preempts a negligence claim and that it did not design,

7  manufacturer, or sell the blewey tube, which it argues is the relevant product.  For the reasons

8  stated below, the Motion for Summary Judgment [Dkt. # 48] is GRANTED.  The case is

9  dismissed with prejudice.[2]

10                             I.     BACKGROUND

**A.  Arcadia's Marlin 5**

11

12       Sandvik is the manufacturer of the Marlin 5.  The Marlin 5 is a truck mounted, top drive,

13  water well drill that can perform multiple types of drilling operations.  One type of drilling is

14  casing hammer drilling, which allows the water to come out clear.  The Marlin 5 is not designed,

15  manufactured, or sold with a casing hammer installed, but an end user can attach one.  Sandvik

16  does not sell casing hammers; instead they are aftermarket parts over which Sandvik has little or

17  no control.  Sandvik does not profit from the sale of casing hammers and does not normally

18  attach them to the rigs it sells.

19       Generally, the casing hammers have a large export hole that allows water, rock, and

20  debris to be released from the hammer.  A user may attach a blewey tube to the "anvil" on the

21  end of the hammer.  The blewey tube is a plastic extension that goes on to a barbed fitting, and

---

[2] Although Nelson named several Defendants, the only remaining defendant is Sandvik.  Nelson moves [Dkt. #65] the Court to correct the case caption to reflect that Sandvik is the only Defendant.  That Motion is GRANTED.

the barbed fitting is screwed to the anvil. (Nelson Dep. at 64.)  It directs water and soil removed from the ground to a particular location during the drilling operation.  The casing hammer does not require the use of a blewey tube; its use is optional.  Accordingly, Sandvik plays no part in an end user's decision to use or not use a blewey tube.  Sandvik does not sell blewey tubes generally, and it did not sell or install the blewey tube at issue in this case.

In 2005, Arcadia purchased the Marlin 5 water well drill from a distributor.  Arcadia requested that Sandvik attach an Atlas casing hammer prior to delivery.  Atlas shipped an already-built hammer to Sandvik, and Sandvik attached it to the Marlin 5.  Sandvik charged the distributor for the hammer at cost—it did not mark up the price or make a profit on the sale of the Atlas Hammer.  Arcadia then purchased the rig from the distributor.  After taking delivery of the Marlin 5, Arcadia attached a blewey tube to the Atlas hammer.[3]

**B.  Nelson's Injury**

On August 23, 2007, Nelson started working on a water well at a residential site for Arcadia.  Nelson and his co-worker, Isaac Powers, were using the Atlas hammer with a blewey tube threaded on to a collar fitting. (Nelson Dep. at 64.)  Because blewey tubes were always a "problem," Nelson had taped the collar fitting with heavy duty tape. (*Id*. at 72.)  Nelson drilled about 300 feet that day and then left the rig at the residence so that he could continue working the next day.  He did not detach the blewey tube from the hammer before leaving that night.

The next day, Nelson arrived at the residence with the rig already in place.  Nelson walked around the rig to do a visual inspection. (Nelson Dep. at 62.)  In order to determine if the blewey tube was still on tight, Nelson visually looked at it and "moved it." (*Id*. at 67.)  Nelson warmed up the rig for about twenty minutes, but then noticed that something was wrong.  (*Id*. at

---

[3] The blewey tube's manufacturer is unknown.

1  68.) The air pressure in the casing hammer started to rise as a result of debris that created a
2  blockage at the end of the blewey tube. Nelson claims that he put his right hand on the tube and
3  "gently pushed" it to direct the soil and water as it released. (*Id*.) As he pushed it, the blewey
4  tube disconnected from the anvil. Water and debris pounded Nelson into a tree causing several
5  injuries. The parties dispute how Nelson actually "pushed" the tube. Nelson states that he gently
6  pushed with one hand in order to help direct the flow. Other evidence suggests that Nelson may
7  have pushed on the blewey tube with both of his hands. (Mot. for Summ. J. at 8.)

8  Nelson sued Sandvik for negligence and violations of the Washington Products Liability
9  Act, arguing that the drill rig was not reasonably safe as designed and lacked adequate warnings.
10 Sandvik now moves for summary judgment on both claims. First, Sandvik correctly argues that
11 the negligence claim fails as a matter of law because the Washington Products Liability Act
12 preempts all common law negligence claims. Sandvik also argues that it only manufactured the
13 Marlin 5, not the Atlas hammer or blewey tube that caused the injury. Sandvik argues that it is
14 not a product seller of the Atlas hammer because it only attached the hammer after Arcadia
15 purchased it from Atlas. Nelson's Response to the Motion is a two-page document that does not
16 assert any facts, cite any cases, or make any arguments.[4] Sandvik correctly claims that Nelson's
17 two-page response to its motion is insufficient as a matter of law.[5] Nelson has failed to cite any
18 specific facts or provide any legal analysis. Nonetheless, in the interest of deciding the case on

---

[4] Sandvik moves to strike one of the declarations attached to Nelson's response . Because the declaration does not affect the determination of the Summary Judgment Motion, the Motion to Strike [Dkt. #57] is Denied as moot.

[5] Sandvik accurately sums up the problem: "Plaintiff's failure to offer a proper response is unfair to the Court, which must spend time looking for evidence as if it were Plaintiffs' lawyer; to other litigants, whose cases the Court cannot attend to during the extra time required to decipher Plaintiff's opposition materials; and to the adverse party, which is left to guess as to what should be addressed in this reply." (Reply at 5.)

the merits, the Court has combed the record in order to address Nelson's claim and Sandvik's challenge to it.

## II. DISCUSSION

**A. Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the suit's outcome suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**B. Washington Product Liability Act**

The Washington Products Liability Act (WPLA) is the exclusive remedy for all product liability claims. REV. WASH. CODE § 7.72.010(4). In order to establish a prima facie case for product liability, a plaintiff must prove that: (1) a manufacturer's product, (2) was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided, and (3) caused harm to the plaintiff. REV. WASH. CODE §7.72.030(1); *Bruns v. PACCAR, Inc.*, 77 Wash. App. 201, 208, (1995).

**C.  Sandvik Is Not Liable As A Product Manufacturer.**

Under the WPLA, a product seller is strictly liable to a claimant if the product seller manufactured the relevant product or the product seller held itself out as a manufacturer.  REV. WASH. CODE §§ 7.72.010, 030.  The "relevant product" is the product or its component part that gave rise to the product liability claim.  REV. WASH. CODE § 7.72.010.  If a component part of a final product causes the injury, the component part is the relevant product.  *See Parkins v. Van Doren Sales Inc.*, 45 Wash. App. 19, 24-25 (1986) (concluding the defendant was strictly liable when it designed the component part that caused the injury but did not design the finished machine); *see also Sepulveda-Esquivel v. Cent. Mach. Works, Inc.*, 120 Wash. App. 12, 19 (2004) (concluding a hook was not the relevant product when the completed hook assembly caused the injury, not the hook by itself).

In this case, the blewey tube and its connection to the Atlas casing hammer caused Nelson's injuries.  There is no claim that the connection between the Marlin 5 rig and the casing hammer caused the injury. Even Nelson's expert, Dr. Scheibe, emphasizes that the "<u>connection</u> between the casing hammer and the discharge (blewey) tube" was not reasonably safe as designed.  (Scheibe Dec. at 3) (emphasis in original).  Even Dr. Scheibe states, "The design of the discharge tube connection was faulty not only because it did not provide a safe physical means for securing a discharge tube that had to be regularly attached and removed, but it failed to provide instructions for how to attach the tube properly, and in light of the danger, no warning to describe the consequences of such a risk." (Scheibe Dec., Ex. B at 5.)  The Plaintiff's expert addresses  only problems with the blewey tube, which makes it the relevant product in this case.

        *1.  Sandvik did not manufacturer the relevant product.*

Under the WPLA, a manufacturer includes "a product seller who designs, produces, makes, fabricates, constructs, or remanufacturers the relevant product or component part of a

product before its sale to a user or consumer." REV. WASH. CODE § 7.72.010.  There is simply no evidence whatsoever that Sandvik played any role in the design, manufacture, sale, or installation of the blewey tube.  At most, Sandvik attached the Atlas casing hammer at Arcadia's request, and the optional blewey tube was connected by someone else to the Atlas casing hammer after delivery.  There is no claim that the connection between Sandvik's Marlin 5 drill and the Atlas casing hammer was unsafe; Plaintiff's entire theory is that the connection between the blewey tube and the Atlas casing hammer was improperly designed.   Sandvik's evidence shows that it did not design, manufacture, sell or install the blewey tube, and Nelson has not presented any evidence to the contrary.  Sandvik is not the manufacturer as a matter of law.  Because Sandvik did not manufacturer the blewey tube, it had not duty to warn about the potential dangers of using the hammer in connection with the blewey tube.  *See Simonetta v. Viad Corp.*, 165 Wash. 2d. 341, 355 (2008).

> *2.  Nelson has not produced any evidence that Sandvik held itself out as the manufacturer.*

A product seller or entity not otherwise a manufacturer may also be strictly liable if the entity "holds itself out as a manufacturer." REV. WASH. CODE § 7.72.010(2).  Nelson has produced no evidence in support of his claim that Sandvik held itself out as the manufacturer of the blewey tube.  On the other hand, Sandvik has produced evidence showing that it did not and does not sell the Marlin 5 with a casing hammer already attached.  Additionally, Sandvik produced evidence showing that it takes no part in the decision to use blewey tubes and that it does  not attach blewey tubes to casing hammers.  The uncontroverted evidence shows that Arcadia knew that it purchased the hammer from Atlas, and Sandvik did not have any say in Arcadia's decision to use the blewey tube.  Sandvik did not hold itself out as the manufacturer of the blewey tube as a matter of law.

**B.  Sandvik Is Not Liable As a Product Seller.**

A product seller is "any person or entity that is engaged in the business of selling products." REV. WASH. CODE $ 7.72.010.  A product seller can include a "manufacturer, wholesaler, distributor, or retailer of the relevant product."  A product seller is only liable in a limited number of circumstances.[6]  None of those circumstances are applicable here because Sandvik is not a "product seller" of the "relevant product."  As stated above, the relevant product is the blewey tube.  There is no evidence that Sandvik sold the blewey tube.  Even if the relevant product was the Atlas hammer, Sandvik has established that it did not "sell" the casing hammer to Arcadia; instead it attached the casing hammer at Arcadia's request.  Sandvik did not and does not make profits off of the casing hammer.  Sandvik charged the distributor at cost, and Arcadia purchased the rig through the distributor.  Nelson has failed to meet his burden; he has not put any facts in the record suggesting that Sandvik was a product seller of the blewey tube or the casing hammer.  Therefore, Sandvik is not the seller as a matter of law.

### III.   CONCLUSION

Nelson has failed to meet its summary judgment burden on either a manufacturer or product seller theory under the Washington Products Liability Act.  For the reasons stated above, Sandvik's Summary Judgment Motion  [Dkt. #48] is GRANTED.  Sandvik's Motion to Strike [Dkt. #57] is DENIED.

---

[6] A product seller other than a manufacturer is liable if (1) the harm was proximately caused by the seller's negligence; (2) the harm was proximately caused by the product sellers breach of an express warranty; or (3) the harm was caused by the product seller's intentional misrepresentation of facts about the product.  REV. WASH. CODE § 7.72.040.  And a product seller other than a manufacturer only has the liability of a manufacturer if (1) ther is no solvent manufacturer who would be liable that is subject to service of process; (2) the court determines that it is unlikely that the claimant can enforce a judgment against the manufacturer; (3) the product seller is a controlled subsidiary of the manufacturer; (4) the manufacturer is a controlled subsidiary of the product seller; (5) the product seller provided the plans for the manufacture of the product; or (6) the product seller marketed the product under its trade or brand name.  *Id*.

1     The case is dismissed with prejudice.

2

3     Dated this 11th day of October, 2012.

4

5                                                              _____

6                                                               Ronald B. Leighton
                                                               United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

[DKT. #48] - 9