HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDWARD D. NELSON and ALLISON NELSON, husband and wife,

Plaintiff,

v.

SANDVIK MINING AND CONSTRUCTION, INC., a corporation,

Defendant.

CASE NO. 10-CV-5778-RBL

ORDER

[Dkt. #68]

THIS MATTER is before the Court on Plaintiff Edward Nelson's Motion for Reconsideration [Dkt. #68]. Nelson asks the Court to reconsider its Order Dismissing his claim under the Washington Product Liability Act [Dkt. #66]. While employed with Arcadia, Nelson used a Sandvik Marlin 5 drill rig outfitted with an Atlas casing hammer to drill water wells. Nelson was injured when an optional "blewey tube" (used to direct drilling debris away from the Atlas Hammer) became disconnected from the Atlas hammer. The Court dismissed Nelson's claim, concluding that the relevant product was either the Atlas hammer or the blewey tube, that Sandvik did not produce, make, fabricate, construct, or remanufacture either product, and that there was no evidence that Sandvik held itself out as the manufacturer of either product.

Nelson's current Motion argues(1) that Sandvik designed the connection between the blewey tube and the Atlas hammer during the prototype process, (2) that the Court failed to understand the cause of injury, and (3) that the Court disregarded the expert's opinion. Nelson specifically pointed to *Johnson v. Recreational Equipment Inc.*, 159 Wash. App. 939, 247 P.3d 18 (2011), to show that the Atlas hammer was marketed under Sandvik's brand name. The Court requested a response from Sandvik that addressed (1) whether Sandvik's involvement in the prototype process affects the WPLA analysis and (2) whether, under *Johnson v. Recreational Equipment Inc.*, Sandvik marketed the Atlas hammer or blewey tube under its brand name. For the reasons stated below, the Motion to Reconsider [Dkt. #68] is DENIED.

## I. BACKGROUND

The facts of the case are known to the Court and will not be repeated here. In short, Nelson was injured while using a Sandvik Marlin 5 water well drilling rig, outfitted with a casing hammer manufactured by Atlas. Nelson's employer, Arcadia, asked Sandvik to install the Atlas hammer, even though the Marlin 5 is not generally sold with a casing hammer. Atlas shipped an already-built hammer to Sandvik, and Sandvik attached it to the Marlin 5. Sandvik charged the distributor for the hammer at cost—it did not mark up the price or make a profit on the sale of the Atlas Hammer. Sandvik did not sell or attach a blewey tube to the Atlas hammer. Once Arcadia received the Marlin 5, it attached a blewey tube to the Atlas hammer.

Nelson was injured when the blewey tube clogged. Nelson attempted to clear the blockage by directing the debris with his hand. When he touched the blewey tube, it disconnected from the Atlas hammer. Water and debris pounded Nelson into a tree causing several injuries.

Nelson sued Sandvik under the Washington Product Liability Act. Sandvik moved for summary judgment, arguing that it only attached the hammer at Arcadia's request and took no part in the design of the Atlas hammer. The Court concluded that the relevant product under the WPLA was either the Atlas hammer or the blewey tube; that Sandvik did not design, produce, make, fabricate, construct, or remanufacture either product; and that Sandvik did not hold itself out as the manufacturer of either product.

Nelson seeks reconsideration in order to complete the record. In an abundance of caution, the Court requested a response from Sandvik that addressed Nelson's new arguments. The Court specifically asked Sandvik to address (1) whether Sandvik's involvement in the prototype process affects the WPLA analysis and (2) whether, under *Johnson v. Recreational Equipment Inc.*, Sandvik marketed the Atlas hammer or blewey tube under its brand name.

Sandvik responded, arguing that (1) even if it designed the prototype and knew of the dangers with the blewey tube and Atlas hammer connection, it cannot be liable under a manufacturer theory because it did not manufacture, design, or sell either the Atlas hammer or the blewey tube, (2) it did not rebrand the relevant product or sell it under its name, and (3) Nelson's claims are barred by the open and obvious doctrine.

## II. DISCUSSION

The Washington Products Liability Act (WPLA) is the exclusive remedy for all product liability claims. REV. WASH. CODE § 7.72.010(4). In order to establish a prima facie case for product liability, a plaintiff must prove that: (1) a manufacturer's product, (2) was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided, and (3) caused harm to the plaintiff. REV. WASH. CODE §7.72.030(1); *Bruns v. PACCAR, Inc.*, 77 Wash. App. 201, 208, (1995).

**A. Relevant Product**

It is undisputed that Sandvik manufactured the Marlin 5 water drill rig. The issue is determining the relevant product. Sandvik argues that the Court has already correctly decided that the relevant product is either the blewey tube or the Atlas hammer. Nelson argues that the relevant product is the Marlin 5 and that the determination of the relevant product is a question of fact for the jury. The Washington Product Liability Act defines the relevant product as the product or its component part that gave rise to the product liability claim. REV. WASH. CODE 7.72.010(3).

Under Washington law, if a particular component can be identified as giving rise to the claim, that component, rather than the entire assembled product, is the relevant product. *See Sepulveda-Esquivel v. Central Machine Works, Inc.*, 120 Wash. App. 12 (2004); *Parkins v. Van Doren Sales, Inc.*, 45 Wash. App. 19 (1986). In *Parkins*, the court concluded that the manufacturer of the component part of a pear processing line was the manufacturer of the relevant product when the component part caused the injury. *Parkins*, 45 Wash. App. at 24–25. The court reasoned that, because the injury was caused by the component part, "as opposed to other equipment which made up the pear processing unit, those parts constitute 'relevant' products for the purposes of the act." *Id*. Similarly, the court in *Sepulveda-Esquivel* determined that a completed hook assembly caused the injury, and thus, the manufacturer of the hook was not the manufacturer of the "relevant product" under the act. *Sepulveda-Esquivel*, 120 Wash. App. at 19. The court recognized that, although the parties did design and provide the hook, neither party "made, supplied, or sold the finished, completed hook assembly." *Id.*

In this case, Nelson was injured after the blewey tube disconnect from the hammer.[1] For the purposes of summary judgment, the Court views the facts in the light most favorable to Nelson. According to Nelson and his expert, it is the connection between the casing hammer and the blewey tube that caused the injury. (Dkt. #54 at 3.) Thus, under Washington law, the relevant product is the connection between the Atlas hammer and the blewey tube.[2] It is unclear whether the faulty connection is because of the blewey tube or Atlas hammer, so either of those products could be classified as the relevant product.[3]

Nelson argues that Sandvik knew that the assembled unit (with the Atlas hammer and the blewey tube connection) would fail because of the prior prototype program. Specifically, Nelson claims that the entire point of the prototype program was to determine if the Marlin 5 would work with a casing hammer. Even if that was the goal of the prototype program, Nelson has failed to point to any facts that suggest Sandvik is liable for a faulty connection between a hammer it did not design, make, or manufacture and a blewey tube it did not design, make, or manufacture. Nelson simply cannot connect Sandvik to the relevant product.

To further support the argument that the prototype transforms the analysis, Nelson offers the expert opinion of Mr. Scheibe: "In my opinion this assembly and connection was designed and assembled and apparently finalized by Sandvik during the prototype program with Arcadia" The touchstone for admissibility of expert opinion evidence is whether it will be helpful to the

---

[1] The parties disagree on what caused the tube to disconnect. Nelson argues it was a faulty design, and Sandvik argues that Nelson pushed on the tube causing it to disconnect. This factual dispute does not alter the analysis as to the relevant product.

[2] In the event that Nelson attempts to argue that the design of the Marlin 5 caused the injury because it required him to stand close to the area where the unsafe connection was, the argument fails because that design choice had nothing to do with Nelson's injury. If Sandvik had designed the Marlin 5 so that the operator was nowhere near the Atlas hammer or the blewey tube, it would not have mattered because Nelson went to the connection and gently pushed on it.

[3] However, the factual dispute is not enough to defeat summary judgment because there is no evidence that Sandvik manufactured either of these products.

jury. And it is well established that expert testimony that merely tells the jury what the outcome should be is not helpful, and is not admissible. *See United States v. Duncan*, 42 F.3d 97, 101 (2nd Cir. 1994). Although much of Scheibe's testimony would be admissible, his opinion that the connection was designed by Sandvik is not an expert opinion; it is a (demonstrably incorrect) statement of fact. He offers no basis for opining that Sandvik designed and finalized the connection during the prototype program. Even if Sandvik did make a design choice to include the Atlas hammer and the blewey tube on the Marlin 5 as part of the prototype program, there is no evidence that it took any part in designing how those pieces would connect. In fact, Mr. Schiebe's expert report specifically addresses the use of pipe threads and a lack of auxiliary coupling—both design choices that had nothing to do with Sandvik's decision to use an Atlas hammer and blewey tube during the prototype program.[4]

**B. Marketed Under a Trade or Brand Name**

Nelson argues that, under *Johnson v. Recreational Equipment Inc.*, 159 Wash. App. 939 (2011), Sandvik marketed the relevant product under its brand name. In *Johnson*, REI attempted to apportion fault to the actual manufacturer of a product that REI had sold under its brand name. *Id*. at 949. The court determined that REI could not apportion fault to the actual manufacturer because it would effectively abrogate the WPLA's requirement that a product seller be subject to the liability of a manufacturer when the seller brands the product as its own. *Id*. at 950.

Although Nelson correctly argues that a product seller who brands the product as its own is liable as a manufacturer, Nelson has pointed to no evidence that could allow a reasonable trier

---

[4] Nelson also did not get injured on the prototype machine. After the prototype program ended, Arcadia ordered a new Marlin 5. Arcadia requested the installation of the Atlas hammer. Arcadia added the blewey tube to the Atlas hammer after the Marlin 5 was delivered by Sandvik.

of fact to find that Sandvik branded the Atlas hammer or the blewey tube as its own.  At most, Sandvik installed the Atlas hammer at Arcadia's request.  Nelson has offered no evidence that Sandvik ever attempted to brand the Atlas hammer as its product, and there is no evidence that would allow a reasonable trier of fact to find that the hammer was marketed under Sandvik's trade or brand name:  Arcadia specifically requested the installation of the *Atlas* hammer; the Atlas hammer says "Atlas" on it; and the invoice identifies the hammer as an "Atlas hammer."

And there is no evidence that Sandvik had anything to do with the blewey tube.  Sandvik did not deliver the Marlin 5 with a blewey tube, it did not supply or connect a blewey tube, and there is no evidence that Sandvik told Arcadia to use a blewey tube on *this* Marlin 5.

Although Sandvik delivered the prototype to Arcadia with the Atlas hammer and the blewey tube, there is no evidence that the prototype attempted to market the entire assembled product as Sandvik's own creation.  When Arcadia eventually purchased a Marlin 5, Arcadia specifically requested the Atlas hammer.  Arcadia added the blewey tube.

**C.  Known Danger**

Because Sandvik prevails on its argument that it did not design, manufacture, or sell the relevant product, the Court does not need to address Sandvik's argument that Nelson's claims are barred by the open and obvious danger doctrine.  However, Sandvik's argument is meritorious as a defense to Nelson's failure to warn claim.  In order to establish liability for failure to warn, "a plaintiff must first show that the lack of adequate warnings or instructions proximately caused his or her injury."  *Anderson v. Weslo, Inc.*, 79 Wash. App. 829, 838 (1995).  Generally, "a manufacturer does not have a duty to warn of obvious or known dangers." *Id*.

Nelson has explained that he had seen blewey tubes blow off of other rigs (Dkt. #49–4 at 53), that the blewey tube "is always a problem" (*Id*. at 43), that the blewey tube would

sometimes come off (*Id*.), and that the blewey tube on the rig he was using at the time of his injury was taped on with heavy duty tape. (*Id*.) Nelson argues that Sandvik should have known about the connection problem because of the prototype program, but Nelson was the person in charge of operating the prototype rig. Sandvik does not have a duty to warn users about dangers that are already known, and any failure to warn of known dangers cannot be the proximate cause of the accident as a matter of law

## III. CONCLUSION

The Motion to Reconsider [Dkt. #68] is DENIED. The case is dismissed.

IT IS SO ORDERED.

Dated this 6th day of December, 2012.

Ronald B. Leighton
United States District Judge